## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2018, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Harold Driver, Jr.,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | June 27, 2018<br><br>Court of Appeals Case No.<br>36A04-1712-CR-2995<br><br>Appeal from the Jackson Circuit Court<br><br>The Honorable Chris D. Monroe, Senior Judge<br><br>Trial Court Cause No.<br>36C01-1106-FB-17 |

**Brown, Judge.**

[1] Joseph Harold Driver, Jr., appeals his sentence following the revocation of his probation. Driver raises one issue which we revise and restate as whether the trial court abused its discretion in ordering him to serve the remainder of his previously suspended sentence. We affirm.

## Facts and Procedural History

[2] On June 22, 2011, the State charged Driver with attempted dealing in methamphetamine as a class B felony. On September 22, 2011, he pled guilty. On October 18, 2011, the court accepted Driver's guilty plea and ordered that he "be imprisoned for 8 years in the appropriate correctional facility, 5 years suspended, placed on supervised probation for 5 years" and that he receive "132 days credit, 132 days credit time." Appellant's Appendix Volume 2 at 51. At some point, Driver's probation was transferred from Jackson County to the state of Tennessee.

[3] On August 2, 2017, the State filed a petition to revoke probation and request for a warrant, which alleged that, on or about July 20, 2017, Driver had committed two counts of domestic assault and a count of unlawful possession of a weapon by a convicted felon "as charged in Rutherford County, Tennessee under cause #F-77554, a direct violation of Condition #2 in his Order of Probation."[1] *Id.* at 61.

_____

[1] The Appellant's Appendix contains the court's order of probation, which is addressed to "Joe H. Driver Jr." at Murfreesboro, Tennessee and which states, under the heading "Standard Conditions of Probation," "2. You must not commit another criminal offense. If you do commit another criminal offense, your probation

[4]     On December 6, 2017, the court held a hearing. When it asked how Driver wished to proceed, the following exchange occurred:

> [Driver's Counsel]: Your Honor, I was told that the prior hearing where [Driver] was Pro Se, that the [c]ourt had withdrew the sanctions but left the admissions . . .
>
> THE COURT: Well, that's my recollection, but sometimes when I appoint counsel the [d]efendant may want to do more. As I advised him at the hearing the allegation of the violation is by a criminal charge and the [c]ourt's understanding is that he pled guilty to that charge and so . . . as I understood [Driver's] objection from the [c]ourt's previous, a couple hearings ago, was the disposition but not the finding of a violation.
>
> [Driver's Counsel]: He still is admitting to the allegation and . . [.]
>
> THE COURT: Okay.
>
> [Driver's Counsel]: [. . .] arguing the sanctions.

Transcript Volume 1 at 3.

[5]     Probation Officer Jacob Finley testified Tennessee submitted an annual progress report regarding Driver's probation "usually about February" for the first four years of his supervision which said that Driver was in compliance but

---

may be revoked." Appellant's Appendix Volume 2 at 57. Under the heading of "Special Conditions," the order states, "26. You shall submit to a responsible drug and alcohol abuse program for evaluation by 3-1-2013. If the evaluation reveals a need for therapy, you must complete that program as established and pay all costs associated therein." *Id.* at 59. The initials "JD" appear in the space provided next to all the conditions imposed by the court.

that in "January of 2017 we started to receive information that [Driver had] picked up some new arrests in November and December of 2016." *Id.* at 13-14.

[6] Driver testified that he had a leg and foot injury and back issues and then stated: "My health, other than – My health's all right pretty much." *Id.* at 5. He testified that he received one year probation for the "gun charge" in the "felony case" in Tennessee and stated, when asked if that was the only case he had in Tennessee, that "[t]he other two (2) was [sic] misdemeanors. I got drunk on some moonshine and, you know, I got into it with my wife and daughter and, you know, at the time and they gave me just a domestic on it." *Id.* at 6. When asked again if any other charges were filed in Tennessee, he answered, "[n]o. Just a Reckless Driving," and added, "[t]hey just put me on like a three (3) month probation thing, you know, on misdemeanor probation. 'Cause I'm on misdemeanor and felony probation down there." *Id.* at 7. He agreed that he had a substance abuse problem and stated, "I mean, I drank a lot, yeah, every now and then. That's my big problem, I drink, you know, and that's what gets me in trouble." *Id.*

[7] According to his testimony during cross-examination, Driver pled guilty to the "Reckless Driving case" and to the "other case . . . [involving] Domestic Assault, Domestic Assault, Two Counts, and Unlawful Possession of a Weapon." *Id.* at 8. He responded he received at least two DUI charges in Tennessee and a charge of having "a weapon inside of [a jail] facility" when he "went into the jail . . . and . . . was drunk and . . . took it off and showed it to them" that, "they threw . . . out of [c]ourt." *Id.* at 10. He indicated that he

"caught a DUI and Reckless Driving" in Kentucky for "flying down the interstate too fast," answered affirmatively when asked if he had "a Marijuana in Tennessee" in 2009, and stated "I mean, I've had a little trouble with drugs too." *Id.* at 11. When asked if he also had probation violations, he answered: "Yeah. I mean, down there every time you get, I mean, you ain't got to be convicted down there, especially on misdemeanor. They'll violate you right off the top right there. You going to get a violation." *Id.*

[8] Driver indicated that he was still married to his wife, C.D., at which point the court asked if she was the one he battered in Tennessee and he responded, "I've got the charge for that, but I mean, I didn't touch her." *Id.* at 16. The following exchange occurred:

> THE COURT: So you didn't really do it but you pled guilty anyway?
>
> [Driver]: Yeah, I pled guilty to it, yes.
>
> THE COURT: So you lied to somebody. I don't know how they do it in Tennessee but do they swear you in and have you agree that you committed the offense?
>
> [Driver]: Huh?
>
> THE COURT: I don't know how they do it in Tennessee, but in Indiana we require that someone be placed under oath, swear them in, and then they testify and they admit that they committed the crime. Is that what they do in Tennessee?
>
> [Driver]: Well, down there I just signed a plea but they didn't have no –
>
> THE COURT: Okay. So you signed a document.

[Driver]: Yeah.

THE COURT: Is that what you're saying?

[Driver]: I mean, yeah. I mean, she was supposed to. And me, I signed it too right there, I mean, but I just, I just took the charge, you know.

THE COURT: All right. Well, you, you're doing something similar to what you've done before. You kind of go on and that's, you know, not a big problem but – It sounds to me like you signed a Plea Agreement that said you agree you committed the crime and now you're kind of hedging on that. I think you made some kind of comment like, "Well, you know, yeah, I hit her before but, you know, it's only every so often or something."

[Driver]: Well no, 'cause I ain't never hit my wife.

THE COURT: Never hit her?

[Driver]: I never hauled off and hit her, not one time.

THE COURT: Did you ever push her?

[Driver]: Well yeah. I've grabbed her arms to contain her when she'd come at me, but that's about all I've done.

THE COURT: Okay. You know that's a Battery.

[Driver]: Yeah, I know.

THE COURT: That's illegal.

[Driver]: I know.

*Id.* at 16-17. Driver indicated that he violated two protection orders with his wife when asked by the court about his presentence report. When the court inquired into his alcohol usage, the following exchange occurred:

THE COURT:  So why do you keep drinking?

[Driver]: I wish I could just throw it down there.

* * * * *

THE COURT:  Why don't you stop?

[Driver]:  I don't know why I quit drinking, I mean, keep drinking.

THE COURT:  So that's a problem because if you don't know why, you will not stop.  Obviously you haven't stopped.  And so if you still drink, first of all that's a violation of the condition of probation here.  Okay?

[Driver]:  Okay.

THE COURT:  . . . So it sounds to me like it's likely, the first choice you have to make is are you going to drink or not.  And you choose to drink.  Then under the influence you make other poor choices. . . .  So, you don't get it yet.  All right.  You haven't apparently even given your drinking any significant consideration.  And based upon your own testimony here today it's your drinking that gets you in trouble.  Is that right?

[Driver]:  Yes, sir.  I've been, I'm, I've been thinking, I mean, the whole time I've been in jail, you know, about, you know, about my drinking.  I'm going to quit.  It pays not to be drinking (indiscernible).

*Id.* at 18-19.  When asked if he was saying that he was going to stop drinking now, Driver stated he was going to try his best and, when the court asked for specifics, he described his daughter's pregnancy and wife's attempted suicide.

[9]  On December 12, 2017, the court entered an order revoking Driver's probation, finding that Driver acknowledged under oath he had violated the terms of his

supervised probation as alleged in the State's petition to revoke probation and ordered the "suspended sentence of five (5) years into execution to be served in the appropriate penal facility." Appellant's Appendix Volume 2 at 70.

## *Discussion*

The issue is whether the court abused its discretion in ordering Driver to serve the remainder of his previously suspended sentence. Driver does not challenge the finding that he violated his probation. Rather, he argues, in effect, that his ready admission to the present violation and the completion of "almost all of his suspended sentence without any violation," dictate that the trial court abused its discretion by revoking his entire suspended sentence. Appellant's Brief at 12. Specifically, he contends that "[w]ith a short period o[f] probation left to complete, [he] made a mistake," "received new charges," and "admitted to his mistake as soon as was able to." *Id.* He contends that the court's order to serve the balance of his suspended sentence came "the day after he was scheduled to be terminated from probation." *Id.* at 9. He also points to several medical, financial, and family circumstances to explain and mitigate the violation, and argues that "[he] and his dependents are suffering undue hardship as a result of the . . . revocation of his suspended sentence. The physical and mental wellbeing of, [sic] not only Driver, is substantial[ly] impacted by the trial court's error." *Id.* at 11-12.

The State argues that Driver admitted to consuming alcohol and being convicted of reckless driving while on probation, both violations of his probation, that the court had discretion to order him to serve his previously

suspended sentence, and that he has essentially invited this Court to reweigh his admitted violations. The State further contends that his family circumstances do not mandate a finding of undue hardship, his physical condition is not deserving of mitigation, and his claim of mental illness is "at best speculative" given that no evidence has "established any nexus between [Driver's] conduct and any mental health issue." Appellee's Brief at 9.

[12] Ind. Code § 35-38-2-3(h) sets forth a trial court's sentencing options if the trial court finds a probation violation and provides:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[13] The Indiana Supreme Court has held that trial court probation violation determinations and sanctions are reviewed using the abuse of discretion standard. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013) (citing *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). The Court explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to

proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Prewitt*, 878 N.E.2d at 188. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citation omitted). As long as the proper procedures have been followed in conducting a probation revocation hearing, "the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." *Goonen v. State*, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999). When the alleged probation violation is the commission of a new crime, conviction of the new crime is not required. *Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015) (citing *Richeson v. State*, 648 N.E.2d 384, 389 (Ind. Ct. App. 1995), *trans. denied*).

[14] The record reveals that the trial court initially ordered Driver to be imprisoned for eight years with "5 years suspended, placed on supervised probation for 5 years." Appellant's Appendix Volume 2 at 51. As pointed out in his brief, Driver does not challenge the finding that he violated his probation. At the probation revocation hearing, he admitted to the allegation in the State's petition that he had two counts of domestic assault and a count of unlawful possession of a weapon by a convicted felon. The court heard testimony from Driver regarding several charges in Tennessee and Kentucky, as well as admissions of probation violations, alcohol abuse, substance usage, and other protection order violations. When the court asked about his pleading guilty to assaulting his wife, Driver stated that he "never hit my wife," admitted that he

pushed her, and admitted that he "grabbed her arms to contain her when she'd come at me, but that's about all I've done," before acknowledging that he knew his action constituted a battery. Transcript Volume 1 at 17. He testified that he had a leg and foot injury and back issues, but stated that his health was "all right pretty much." *Id.* at 5. To the extent Driver argues that his alleged medical, financial, and family circumstances explain and mitigate his violation, we will not reweigh the evidence below. *Terrell v. State*, 886 N.E.2d 98, 100 (Ind. Ct. App. 2008) (citing *Piper v. State*, 770 N.E.2d 880, 882 (Ind. Ct. App. 2002), *trans. denied*).

[15] Given the circumstances as set forth above, we cannot say that the court abused its discretion in ordering Driver to serve the remainder of his previously suspended sentence. *See Milliner v. State*, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008) (holding that the trial court did not abuse its discretion in reinstating the probationer's previously suspended sentence), *trans. denied*.

## *Conclusion*

[16] For the foregoing reasons, we affirm the trial court's order that Driver serve the remainder of his previously suspended sentence.

[17] Affirmed.

Bailey, J., and Crone, J., concur.